UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DAMEY LOUIS LOVER, | ) | |
| Institutional ID No. 1437126, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:14-CV-018-BG |
| DENISE DE SHIELDS, M.D., *et al.*, | ) | ECF |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    Procedural Background

Proceeding *pro se* and *in forma pauperis*, Plaintiff Damey Louis Lover filed this action

pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights during his incarceration

at the Price Daniel Unit (Price Unit) of the Texas Department of Criminal Justice (TDCJ).  Lover

claims that Defendants acted with deliberate indifference to his serious medical needs during his

incarceration at the Price Unit.  He seeks compensatory damages, punitive damages, and injunctive

relief.

Lover filed his Complaint on April 30, 2012.  His case was transferred from the Southern

District of Texas to the Northern District of Texas on February 5, 2014, with respect to his claims

against Defendants Dr. Denise De Shields and Dr. Terrance Rose.  The United States District Court

subsequently transferred this case to the undersigned United States Magistrate Judge for further

proceedings.  The undersigned thereafter reviewed authenticated records from TDCJ and conducted

an evidentiary hearing on April 15, 2014, pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82

(5th Cir. 1985).  At the hearing, Lover consented to proceed before the undersigned magistrate

judge; however, the hearing was subsequently terminated due to technical difficulties with the televideo equipment. Consequently, the undersigned ordered Lover to complete a Questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). Lover timely returned the completed Questionnaire to the U.S. District Clerk on May 12, 2014.

Because Lover is proceeding *in forma pauperis*, his claims are subject to 28 U.S.C. § 1915(e)(2), which requires dismissal of a complaint if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (2014). Pursuant to § 1915(e)(2), the court dismissed Lover's claims against Defendant Dr. Denise De Shields only and entered judgment accordingly. Thus. Defendant Dr. Terrance Rose is the only remaining Defendant in this case.

After considering Lover's Complaint, his Questionnaire responses, the authenticated records provided by TDCJ, and applicable law, the court determined that Lover's remaining allegations against Defendant Rose survived preliminary screening. The court thereafter entered an order to answer as to Defendant Dr. Terrance Rose on July 9, 2014. Along with the order, the clerk forwarded a consent form and instructions to Defendant Rose regarding his right to proceed in this action before the United States Magistrate Judge.

Defendant Rose filed an Original Answer and Jury Demand on August 7, 2014. In his Original Answer, Defendant Rose generally denied Plaintiff's allegations and raised affirmative defenses of qualified immunity, Eleventh Amendment immunity, and failure to exhaust administrative remedies. Defendant Rose also alleged that Plaintiff's own conduct caused his injuries or damages, and he asserted a counterclaim for attorney's fees and costs under 42 U.S.C.

2

§ 1988, claiming that Plaintiff's lawsuit is frivolous and without merit.  As of this date, no consent

form has been filed with the court on behalf of Defendant Rose.  Pursuant to the order transferring

this case, the undersigned now files this Report and Recommendation.

## II.      Findings of Fact

### A.      Lover's Allegations

In his Complaint and Questionnaire responses, Lover claims that he was denied

proper medical care after he had a stroke on April 26, 2010, at the Price Unit.  Specifically, Lover

claims that he requested medical attention on multiple occasions between April 26 and May 7, 2010,

but Defendant Rose refused to examine Lover regarding his complaints of stroke symptoms.

Defendant Rose eventually examined Lover on May 7, 2010, at which time Lover alleges Defendant

Rose disregarded his subjective complaints.  Lover was subsequently admitted to the Montford Unit

Regional Medical Facility on May 18, 2010, where clinicians noted that Lover was experiencing

facial and eyelid drooping and right-sided weakness and reported that Lover had likely had a stroke

within the past month.

### B.      Authenticated TDCJ Records

The authenticated medical records show that Lover visited the medical clinic at the

Price Unit numerous times, beginning in March 2010.  During these visits, Lover primarily

complained of lower back pain.  Clinic notes by Defendant Rose dated April 26, 2010—the day

Lover claims to have had a stroke—state that Defendant Rose examined Lover and prescribed

medication to treat high blood pressure and heart problems.  Defendant Rose also noted that Lover

complained of chest pains and shortness of breath at the visit.  The authenticated medical records

also show that Lover was examined by a nurse on May 1 and May 3, 2010, where he complained

of stroke symptoms.

On May 7, 2010, the authenticated medical records show that Lover was again examined by Defendant Rose, at which time Lover complained of wrist pain and trouble walking.   In his Questionnaire response, Lover admitted seeing Defendant Rose on this date, but claims that Defendant Rose ignored his subjective complaints of a stroke and refused to examine him for a possible stroke.

On May 13, 2010, Lover wrote a Grievance complaining that he had not been seen by Defendant Rose between April 26 and May 13, 2010, for stroke symptoms.   Defendant Rose subsequently examined Lover on May 14, 2010, where he noted that Lover was complaining of difficulty walking and tremors in his right hand that had lasted several weeks.   Defendant Rose noted that he planned to expedite an MRI scan of Lover's head.   Lover was subsequently admitted to the Montford RMF Unit, where medical staff listed Lover as having a possible stroke.

## III.   Conclusions of Law

### A.   Preliminary Screening Standard

A court must dismiss a complaint filed *in forma pauperis* by a prisoner if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B) (2013).  A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).   In reaching a frivolous

determination, the court may consider reliable evidence such as the plaintiff's allegations, sworn testimony obtained at a *Spears* hearing, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings).

      **B.**    **Eighth Amendment Claim**

      Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). To allege a constitutional violation, an inmate must show that the prison official acted with deliberate indifference toward his serious medical needs, resulting in unnecessary and wanton infliction of pain. *Id.* Deliberate indifference includes both an objective and a subjective component. *Id.* at 410. The inmate must show objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). Once established, a prison official may be held liable if he (1) knew of the substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to alleviate it. *Id.* In sum, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

      Here, Lover alleges that he had a stroke on April 26, 2010, and he requested medical attention from Defendant Rose on April 27, April 28, May 2, May 3, May 5, May 7, and May 12, 2010. Lover alleges that he informed Defendant Rose of his stroke symptoms, but Defendant Rose failed to address his medical concerns despite repeated requests. As a result, Lover claims that the right side of his body is weakened and he does not have full use of it because he did not receive

physical therapy after his stroke.  Moreover, the authenticated medical records from TDCJ support

Lover's allegation that he was not examined by Dr. Rose between April 26 and May 7, 2010.

At this stage, Lover has alleged facts that support his claims such that they survive the

preliminary screening under 28 U.S.C. § 1915A.

### C.      Exhaustion of Administrative Remedies

An inmate may not bring a claim under 42 U.S.C. § 1983 "until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  TDCJ has a two-step inmate

grievance process.  *See* Tex. Dep't of Crim. Justice, Offender Orientation Handbook 52-54 (2004),

*available at* http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf.  An inmate

"must pursue a grievance through both steps for it to be considered exhausted." *Johnson v. Johnson*,

385 F.3d 503, 515 (5th Cir. 2001).  However, "prison officials' statements concerning administrative

remedies can render such remedies unavailable."  *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir.

2010).

To exhaust administrative remedies for a particular claim, a grievance must give prison

officials "fair opportunity under the circumstances to address the problem that will later form the

basis of the suit[.]"  *Johnson*, 385 F.3d at 522.  However, an inmate need not present legal theories

or identify defendants by name as long as the grievances can fairly be read to alert prison officials

to the conduct that forms the basis of the inmate's claims.  *See id.* at 517-23.

"Since exhaustion is a threshold issue that courts must address to determine whether

litigation is being conducted in the right forum at the right time, . . . judges may resolve factual

disputes concerning exhaustion without the participation of a jury."  *Dillon*, 596 F.3d at 272.

"[W]hen courts rule on exhaustion on the basis of evidence beyond the pleadings, the nonmoving

party should be granted the protections of Rule 56 [governing summary judgment]." *Id.* at 271.

Defendants who raise the affirmative defense of failure to exhaust administrative remedies "must

establish beyond peradventure all of the essential elements of the defense . . . to warrant summary

judgment in their favor." *Id.* at 266.  "If the plaintiff survives summary judgment on exhaustion, the

judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if

necessary." *Id.* at 273.   If a court concludes that an inmate has failed to exhaust available

administrative remedies, the court may dismiss without prejudice and the applicable statute of

limitation may be tolled.  *See Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001).

In the instant case, the TDCJ grievance records include the time period from March 2010 to

February 2014.  The Business Records Affidavit, however, notes that grievances completed prior

to August 2010 may have been purged in accordance with the TDCJ Records Retention Schedule.

Here, there are no grievances for Lover prior to August 2010.  As such, the grievance records do not

include the relevant time period around March 2010 when Lover was housed at the Daniel Unit and

claims to have suffered a stroke.  In his Complaint, Lover asserts that he filed a Step 1 Grievance

prior to being transferred from the Daniel Unit, but he does not mention whether he filed a Step 2

Grievance.  Accordingly, a fact issue exists as to whether Lover exhausted the grievance process.

Because Defendant Rose bears the burden of proof and a factual dispute remains regarding

exhaustion of administrative remedies, the case must proceed forward at this stage.  *See Dillon*, 596

F.3d at 266.

### D.    Qualified Immunity

Defendant Rose asserts qualified immunity in his Answer.  "A public official is

entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the

plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). "When a defendant asserts qualified immunity, the plaintiff has the burden of proving that it is inapplicable." *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012). "Qualified immunity questions should be resolved 'at the earliest possible stage in litigation.'" *Porter*, 659 F.3d at 445 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Courts "have discretion to decide which prong of the qualified immunity analysis to address first." *Waganfeald*, 674 F.3d at 484.

A plaintiff need not "fully anticipate the defense" of qualified immunity in his complaint. *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7 of the Federal Rules of Civil Procedure. *Id.* at 1433. However, "a district court's discretion not to do so is narrow . . . when greater detail might assist." *Id.* at 1434.

Here, Defendant Rose denies Lover's account of the events. Because there are disputed issues of material fact relevant to Defendant Rose's qualified immunity defense, the case should proceed at this stage. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435–36 (5th Cir. 1993) ("Whether [the defendants] had an objectively reasonable basis [for their conduct] cannot be sorted out without settling on a coherent view of what happened in the first place.").

If the district court requires Lover to file a Rule 7 reply to Defendant Rose's assertion of qualified immunity, Lover's reply must "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a

qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.

2012).  If Lover does not meet this heightened pleading standard, the court may rule on a motion to

dismiss based on qualified immunity without allowing discovery.  *See Wicks v. Miss. State Emp't*

*Servs.*, 41 F.3d 991, 996 (5th Cir. 1995) (holding that discovery was improper because plaintiff

"failed to meet the threshold pleading requirements for either of his claims" with respect to qualified

immunity).  A motion to dismiss has not been filed in this case.

> **E.**     **Eleventh Amendment Immunity**

> Defendant Rose asserts Eleventh Amendment Immunity in his Answer.  "The

Eleventh Amendment bars suits by private citizens against a state in federal court." *K.P. v. LeBlanc*,

627 F.3d 115, 124 (5th Cir. 2010).  This bar "also protects state actors in their official capacities."

*Id.*  Accordingly, to the extent that Lover is suing Defendant Rose in his official capacity, his claims

should be dismissed.

## IV.     Recommendation

> For the foregoing reasons, the undersigned recommends that the United States District Court

allow Lover's case to proceed at this stage.

## V.      Right to Object

> A copy of this Report and Recommendation shall be served on all parties in the manner

provided by law.  Any party who objects to any part of this Report and Recommendation must file

specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding

or recommendation to which the objection is made, state the basis for the objection, and specify the

place in the magistrate judge's Report and Recommendation where the disputed determination is

found.   An objection that merely incorporates by reference or refers to the briefing before the

magistrate judge is not specific.   Failure to file specific written objections will bar the aggrieved

party from appealing the factual findings and legal conclusions of the magistrate judge that

are accepted or adopted by the district court, except upon grounds of plain error.   *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:          October 27, 2014.

NANCY M. KOENIG
United States Magistrate Judge

10